LANIER, Judge.
This is a suit by Sidney J. Lacy, Jr. to be reinstated to the position of Personnel Administrator for the City-Parish Government of East Baton Rouge Parish, Louisiana. In the trial court and in this court, Lacy maintains that he was unlawfully terminated because the procedural requirements for removal from office required by Section 4.03[1] of the Plan of Government of the City-Parish of East Baton Rouge were not complied with. The trial court rejected this argument and found as a matter of fact that Lacy resigned his position. This devolutive appeal followed.
*1286 In brief, the appellant concedes that the basic facts set out by the trial judge “are substantially correct”, but claims that the trial court’s determination that he resigned, rather than was terminated, is manifestly erroneous and clearly wrong. The factual findings of the learned trial judge are as follows:
“Mr. Lacy, prior to January 2, 1981, occupied the position of Personnel Administrator for the City-Parish of East Baton Rouge for 16 years. After the election of James Patrick Screen, Jr., as Mayor-President of the City-Parish of East Baton Rouge in the fall of 1981, Mr. Lacy was contacted by J. David Bourland, a member of Mayor-President Screen’s transition committee, about implementing six new unclassified positions that were provided for in the Plan of Government of the City-Parish of East Baton Rouge. Mr. Lacy knew in November 1981 that the position of Personnel Director would be given to another person, however, from his conversations with Mr. Bourland he thought he would get a position in the new administration as Assistant Personnel Director, an unclassified position he helped implement (Exhibit P-9, page 29). Mr. Lacy was desirous of this position so he could continue working for the City-Parish for at least 16 months in order to earn full retirement.
“Mr. Lacy testified that on December 30, 1981, he met with Mayor-President elect Screen and Mr. Bourland and was informed that the new administration would not retain him in the new administration. Mr. Lacy testified that he decided to salvage what he could, so on December 31, 1980, he made application for severance pay of 120 days and was paid $20,403.16. He also sought leave for the unused vacation time in excess of the accumulated sick and/or vacation time of 120 days (Exhibit D-l).
“After assuming the office of Mayor-President, Mayor-President Screen can-celled Mr. Lacy’s annual leave, as in the case of Mr. Burgess. Mr. Lacy seeks reinstatement to the position of Assistant Personnel Administrator effective January 2, 1981, or alternatively, reinstatement to the position of Personnel Administrator and not subject to removal until full compliance of Section 4.03 of the Plan of Government.
“REINSTATEMENT AS ASSISTANT PERSONNEL ADMINISTRATOR “Mr. J. David Bourland testified that he sought Mr. Lacy’s help in implementing the six new unclassified positions for the new administration. He stated that it was his wish that Mr. Lacy would be retained by the new administration due to his expertise of the personnel office. Mr. Bourland candidly testified that his enthusiasm could have led Mr. Lacy to believe that he would be retained as Assistant Personnel Administrator. “Testimony revealed that at no time did Mr. Bourland possess any authority from Mayor-President elect Screen to offer, promise or hire anyone for any position whatsoever.
“This Court finds that neither Mayor-President Screen, nor anyone acting with his authority, agreed to hire Mr. Lacy as Assistant Personnel Director. “REINSTATEMENT OF PERSONNEL ADMINISTRATOR
“Mr. Lacy argues that if he is not hired as Assistant Personnel Administrator, then he should be reinstated as Personnel Administrator and not removed until full compliance of Section 4.03 of the Plan of Government.
“The testimony reveals that after the December 30, 1980, meeting with Mayor-President elect Screen and Mr. Bourland, Mr. Lacy submitted a request on December 31, 1980, for severance pay and unused vacation time (Exhibit D-l). He was paid $20,403.16 severance pay and never returned to work. The Court does not find Section 4.03 applicable inasmuch as Mr. Lacy was not terminated by May- or-President Screen, but in fact resigned.”
* * * * * *
*1287 The facts of record show that appellant was aware well in advance of January 2, 1981, that he would not be retained in the post of Personnel Administrator in the Screen administration. The record further reflects that on December 30, 1980, that appellant was advised by Mayor-President Screen that he would not be retained in the new administration in any position. Thereafter, on December 31, 1980, appellant submitted a Personnel Status Change form to the Personnel Department of the City-Parish of East Baton Rouge indicating that he anticipated a change in status as of January 3, 1981, from the position of Personnel Administrator and sought and did collect 120 days accrued vacation time and sick leave benefits of $20,403.16.
Ordinance 2216 of the City of Baton Rouge and Parish of East Baton Rouge and Rule IX of the Rules Governing Employees in the Classified Service concerning payment for accrued sick leave and/or vacation time not to exceed 120 working days treat classified and unclassified employees identically. Section 2.4 of Rule IX prohibits payment of any kind to the employee in lieu of vacation time except in two instances: (1) if the employee is required to work during a vacation period, or (2) upon termination of employment after completing at least one year of service. Section 2.9 of Rule IX provides for payment of accrued sick leave and/or vacation time not to exceed 120 days when employment is terminated by retirement, discharge, removal through no fault of the employee or death. Since appellant was Personnel Director and responsible for the proper administration of these rules, he certainly knew and understood that when he submitted the Personnel Status Change (PSC) form # 56148 requesting payment for 120 days accrued vacation time and sick leave that he was terminating his employment. Otherwise, he would have been in obvious violation of the ordinances, rules and regulations previously set forth. This conduct indicates a voluntary termination of employment and is inconsistent with a continuation of employment.
Appellant also sought leave for 55 days of unused vacation time in excess of the 120 days previously claimed. In his testimony at pages 72 and 79 of the transcript, he indicated that the purpose of this leave time was to give him “time to look for employment elsewhere.” Mayor-President Screen could not remove the appellant from his position prior to January 2,1981, because he was not in office. Appellant voluntarily removed himself from office in anticipation of action by Mayor-President Screen. The appellant did not attempt to be retained in the position of Personnel Administrator and insist on compliance with Section 4.03 until after his excess leave time was cancelled by Mayor-President Screen. We cannot say that the trial judge was clearly wrong in determining that these facts and circumstances demonstrated an intention by the appellant to voluntarily terminate and/or resign his position as Personnel Administrator. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In view of our determination that the trial judge was not clearly wrong in finding as a matter of fact that the appellant resigned his position, it is not necessary for us to pass on the alternative allegation of equitable estoppel.
For the foregoing reasons, the judgment of the trial court is correct and will be affirmed at appellant’s costs.
AFFIRMED.
LEAR, J., dissents and assigns reasons.
APPENDIX NO. 1
“SECTION 4.03. Chief Executive Officer of the Parish and City.
The mayor-president shall be the chief executive officer of the parish and city and shall have power, subject to this plan of government, the ordinances and resolutions of the councils adopted in pursuance thereof, and the constitution and general laws of the state, to supervise and direct the administration of all departments, offices and agencies of the parish and city governments the heads of which are appointed by him. He shall have all the powers and duties, *1288 not inconsistent with the provisions of this plan of government, conferred or imposed on the mayor of the City of Baton Rouge by its charter or which may be conferred or imposed on the mayors of cities by the general laws of the state applicable to such city. He shall have power to appoint and remove, subject to the provisions of Chapter 9, of this plan of government, the director of finance, purchasing agent, personnel administrator, director of public works, the chief of the fire department and the chief of police, and such other officers and employees as the respective councils may provide by ordinances pursuant to this plan of government. In the case of any officer or employee, who is not a member of the classified service as provided by Chapter 9 of this plan of government or by any general law applicable to the City of Baton Rouge, the mayor-president shall, before he may exercise the power of removal, first serve on the officer or employee sought to be removed a notice in writing setting forth the grounds of the proposed removal and fixing a time and place, not less than ten days after the service of such notice, at which the officer or employee shall be given an opportunity to be heard thereon. After such hearing, which shall be public at the option of the officer or employee, the action of the mayor-president shall be final. The mayor-president may suspend from duty for not more than sixty days any such officer or employee pending final action.” (Emphasis Added).

. Section 4.03 of the Plan of Government of the City-Parish of East Baton Rouge, Louisiana, is attached hereto as Appendix No. 1.